# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MYRON COWHER,<br><br>             Plaintiff,<br><br>v.<br><br>PIKE COUNTY CORRECTIONAL FACILITY, et al.,<br><br>             Defendants. | CIVIL ACTION NO. 3:16-CV-02259<br><br>(MEHALCHICK, M.J.) |

## MEMORANDUM

Before the Court are two motions to dismiss, filed by four of the remaining Defendants to this § 1983 action. The Plaintiff, Myron Cowher, currently an inmate at SCI-Mahoney, seeks damages for deliberate indifference to serious medical needs, negligence, and intentional infliction of emotional distress due to the Defendants' failure to obtain "critical" surgery for Cowher. (Doc. 29). For the reasons contained in this Memorandum, the motion to dismiss filed by Defendant Correct Care Solutions is **GRANTED IN PART** and **DENIED IN PART**. The motion to dismiss filed by Defendants Delbalso, Hardy, and the Pennsylvania Department of Corrections is **GRANTED**.

### I. BACKGROUND AND PROCEDURAL HISTORY

On May 23, 2016, Plaintiff Myron Cowher began a period of incarceration at Pike County Correctional Facility; serving a sentence for criminal convictions. (Doc. 29, ¶ 25). Prior to his incarceration, Cowher "suffered serious and debilitating injuries which rendered him nearly unable to walk as a result of the pain he suffered." (Doc. 29, ¶ 26). The injuries included disc herniations at C6-C7 and C4-C5, a bulging disc at L5-S1, spinal cord distortion, and severe

narrowing of the spinal column, and required adjournment of Cowher's criminal trial for a medical consultation. (Doc. 29, ¶¶ 27-28).

Dr. Juan K. Radjoub recommended an immediate cervical discectomy and cervical fusion and a pre-surgical consult was scheduled for May 31, 2016. (Doc. 29, ¶¶ 29-30). Due to a fear of attempted escape, Pike County personnel told Cowher that he could not attend his appointment. (Doc. 29, ¶¶ 32-33). Pike County and PrimeCare Medical personnel then discontinued administering prescribed medication from the treatment regimen and reduced dosages of two others. (Doc. 29, ¶¶ 35). Pike County officials continued to refuse surgery, even after a second consult with Dr. Radjoub in October 2016 wherein Dr. Radjoub reiterated that immediate surgery was necessary and expanded the target of surgical intervention to include Cowher's C4-C5. (Doc. 29, ¶¶ 36).

Subsequent transfers to SCI-Camp Hill and SCI-Mahoney have not resulted in Cowher receiving the surgery, nor has the treatment plan implemented prior to Cowher's incarceration been followed. (Doc. 29, ¶ 44). On November 10, 2016, Cowher filed suit against ten Defendants; individuals and entities he alleges improperly denied his access to medical care. The currently operative, second-amended complaint requests monetary damages from 17 Defendants: Pike County; Warden Craig A. Lowe; Pike County Correctional Facility; Assistant Warden Jonathan J. Romance; Assistant Warden Robert E. McLaughlin; PrimeCare Medical, Inc.; RN Kendle Jeminola; RN Denise Jeminola; Thomas J. Weber; RN Todd W. Haskins; the Pennsylvania Department of Corrections; SCI-Mahoney Superintendent Theresa Delbalso; Laurel Hardy of SCI-Camp Hill; and Correct Care Solutions. (Doc. 29).

On September 1, 2017, Defendant Correct Care Solutions ("Correct Care") filed a motion to dismiss. (Doc. 42). In support, it argues that Cowher fails to properly state a claim for § 1983 liability under *Monell v. Dep't. of Soc. Serv's. of N.Y.C.*, 436 U.S. 658 (1978). (Doc. 43, at 4). Correct Care continues that Cowher has also failed to state a claim for intentional infliction of emotional distress ("IIED") or negligence. (Doc. 43, at 7-9). Cowher responds that his claim for IIED and negligence claims are adequately pled, and any questions presented by the claims as stated are only issues reserved for a jury. (Doc. 47, at 3-5). Additionally, Cowher states that his *Monell* claim is likewise sufficient to survive a motion to dismiss, and leave to amend should be given should the Court find in favor of the Defendant. (Doc. 47, at 5-6). Lastly, Cowher requested leave to add four Correct Care employees as Defendants. (Doc. 47, at 7). In response, Correct Care reiterates its prior argument and states that a brief in opposition is not the proper vehicle to request leave to file an amended complaint. (Doc. 52).

On September 11, 2017, Defendants Theresa Delbalso, Laurel Hardy, and the Pennsylvania Department of Corrections also filed a motion to dismiss. (Doc. 44). These Defendants argue that Eleventh Amendment sovereign immunity bars liability based on the facts presented, and in any event Cowher has failed to plead facts establishing personal involvement. (Doc. 45, at 4-6). On November 1, 2017, Cowher agreed that Defendants Delbalso, Hardy, and the Pennsylvania Department of Corrections should be dismissed. (Doc. 48). Both motions having been fully briefed, the Court finds each ripe for review.

II. **STANDARD OF REVIEW**

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a defendant to move to dismiss for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6).

The United States Court of Appeals for the Third Circuit has noted the evolving standards governing pleading practice in federal court, stating that:

> [s]tandards of pleading have been in the forefront of jurisprudence in recent years. Beginning with the Supreme Court's opinion in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), continuing with our opinion in *Phillips* [*v. Cnty. of Allegheny*, 515 F.3d 224 (3d Cir. 2008)] and culminating recently with the Supreme Court's decision in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.

*Fowler v. UPMC Shadyside*, 578 F.3d 203, 209–10 (3d Cir. 2009).

In considering whether a complaint fails to state a claim upon which relief may be granted, the court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff. *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994). However, a court "need not credit a complaint's 'bald assertions' or 'legal conclusions' when deciding a motion to dismiss." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997). Additionally, a court need not assume that a plaintiff can prove facts that the plaintiff has not alleged. *Assoc'd. Gen. Contractors of Cal. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983). A plaintiff must provide some factual grounds for relief, which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555. "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. In *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court of the United States held that, when considering a motion to dismiss, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. In deciding a

Rule 12(b)(6) motion, the Court may consider the facts alleged on the face of the complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

## III. DISCUSSION

As stated above, Defendant Correct Care Solutions ("CCS") argues that it should be dismissed because Cowher fails to show a policy or custom implemented by CCS caused any deprivation of medical care and that Cowher's complaint is predicated upon a theory of *respondeat superior* inadequate for liability under § 1983. (Doc. 43, at 4-7). Further, it argues that Cowher has failed to state a claim for intentional infliction of emotional distress or professional negligence against CCS. (Doc. 43, at 7-11).

### A. MONELL LIABILITY

In *Monell v. Dep't. of Soc. Serv's. of City of New York,* the Supreme Court determined that, while municipal bodies may not be sued solely for violations perpetrated by its employees or agents, "it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." 436 U.S. 658, 694 (1978). A private corporation, though not a municipal body, is subject to the same considerations when contracted by a government to provide healthcare services to incarcerated individuals. *See Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 584 (3d Cir. 2003). In *Natale*, the Third Circuit held that:

> [t]here are three situations where acts of a government employee may be deemed to be the result of a policy or custom of the governmental entity for whom the employee works, thereby rendering the entity liable under § 1983. The first is where the appropriate officer or entity promulgates a generally applicable

statement of policy and the subsequent act complained of is simply an implementation of that policy. . . . The second occurs where no rule has been announced as policy but federal law has been violated by an act of the policymaker itself. . . . Finally, a policy or custom may also exist where the policymaker has failed to act affirmatively at all, [though] the need to take some action to control the agents of the government is so obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need.

*Natale*, 318 F.3d at 584.

There is no dispute that CCS was responsible for inmate care during a period of Cowher's confinement. As such, the question is whether any of the three aforementioned grounds for *Monell* liability exist that would potentially render CCS liable under § 1983. In his complaint, Cowher asserts that CCS's "policy to deny prisoners such as Plaintiff from receiving necessary outside medical care" caused prison medical personnel to "deny the necessary medical treatment." (Doc. 29, at 21). Cowher continues, stating that affirmative policy and a lack thereof resulted in systematic non-adherence to prior medical evaluations and necessary treatments. (Doc. 29, at 21). CCS responds that Cowher fails to identify any policy or custom with the requisite level of specificity; instead offering only vague averments of entitlement to relief. (Doc. 43, at 6).

CCS is correct that municipal liability must be predicated upon the identification of a relevant custom or policy, with a complaint specifying "what exactly that custom or policy was." *See McTernan v. City of York, PA*, 564 F.3d 636, 658 (3d Cir. 2009). The plaintiff must provide some factual basis beyond blanket statements of entitlement to relief. *McTernan*, 564 F.3d 658. CCS states that Cowher's complaint is devoid of factual assertions regarding CCS's implementation of policy for treatment. (Doc. 43, at 6-7). However, CCS's quotation of

Cowher's complaint conspicuously omits the specific reference to CCS itself; which reads that named Defendants denied "necessary medical treatment [. . . pursuant to . . . ] Defendant Correct Care's policy to deny prisoners such as Plaintiff from receiving necessary outside medical care." (Doc. 29, at 21).

Admittedly redundantly phrased, the complaint makes the clear argument that CCS, as policymaker, implemented policies that prevented inmates from receiving care from non-prison providers. A "[p]laintiff must plead sufficient facts to make his claim plausible, and [the Court] cannot accept allegations that are mere conclusions." *Korth v. Hoover*, 190 F. Supp. 3d 394, 405 (M.D. Pa. 2016). The question is not whether there is justification for a policy, but whether Cowher pleads facts to show that the Defendant's policy to restrict outside medical access acts in a way to deprive him of constitutional rights.

As pled by Cowher, he underwent a consultation at Geisinger Medical Center on May 21, 2016. (Doc. 29, ¶ 28). This consult pre-dated his incarceration. (Doc. 29, ¶ 28). Dr. Radjoub recommended immediate surgery, with a pre-surgical consultation scheduled for May 31, 2016. (Doc. 29, ¶ 30). Pike County Correctional Facility prevented Cowher from attending the consult or receiving surgery, and Pike County's medical provider, PrimeCare, altered Cowher's treatment plan. (Doc. 29, ¶¶ 31-35). Cowher's counsel inquired with PrimeCare and Pike County officials, with Defendant Thomas Weber responding that possibilities for treatment were being explored. (Doc. 29-1). Counsel interpreted the response and indicating that surgery was being delayed over cost concerns. (Doc. 29, ¶ 38). Even after another consultation resulted in a renewed recommendation for immediate surgery, with an expanded scope, officials continued to deny surgery. (Doc. 29, ¶¶ 36-37).

Cowher received transfer to SCI-Mahoney in January 2017, where Defendant CCS administers medical treatment. (Doc. 29, ¶¶ 41-43). Cowher repeatedly informed CCS employees that he had been set for required surgery prior to his incarceration. (Doc. 29, ¶ 42). Cowher attempted to provide medical records for verification, but CCS employees were "not sure" if they could accept the records as provided. (Doc. 29, ¶ 43). CCS employees amended Cowher's medications and Cowher states that he has been in severe pain and deteriorated in condition.

In contrast to a plaintiff offering only legal conclusions, i.e. a policy "identified" being a policy to provide inadequate medical care, Cowher has satisfactorily stated a claim under *Monell*. Pleading standards do not require a plaintiff to recite the specific text of official policy. *See Pembaur v. City of Cincinnati*, 475 U.S. 469, 480-81 (1986). The burden is on the plaintiff to provide notice to a defendant as to improper conduct and the policy in place that created such conduct. *See McTernan*, 564 F.3d at 658. Cowher has pled facts plausibly demonstrating that he was denied access to medical treatments due to policies in place that restricted access to outside services even when internal medical treatment proved inadequate. Further, Cowher pleads facts indicating that CCS failed to implement policies that would provide access to treatment in a timely manner given the confusion regarding the acceptability of medical records provided at intake. *See Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 584; *Davis v. City of Phila.*, 284 F. Supp. 3d 744 (E.D. Pa. 2018). Discovery and the progression of this case may show that CCS did not act improperly, however at this early stage of litigation Cowher has pled facts sufficient for his claims against CCS to proceed under *Monell*.

The Defendant's motion to dismiss Counts I and IV is **DENIED**.

B. I<span style="font-variant:small-caps">NTENTIONAL</span> I<span style="font-variant:small-caps">NFLICTION OF</span> E<span style="font-variant:small-caps">MOTIONAL</span> D<span style="font-variant:small-caps">ISTRESS</span>

At its most basic, a claim for intentional infliction of emotional distress requires a plaintiff establish: (1) that the defendant's conduct was extreme and outrageous; (2) that the conduct was intentional or reckless; (3) the conduct caused emotional distress; and (4) the distress was severe. *See Chuy v. Phila. Eagles Football Club*, 595 F.2d 1265, 1273 (3d Cir. 1979). "The tort of intentional infliction of emotional distress requires a showing that the defendant[ ] acted in a manner so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized society." *McGreevy v. Stroup*, 413 F.3d 359, 371 (3d Cir. 2005) (internal citations omitted). Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!" Restatement (Second) of Torts, § 46 commend d; *Hunger v. Grand Cent. Sanitation*, 670 A.2d 173, 177 (Pa. Super. Ct. 1996). Further, a claim for intentional infliction of emotional distress requires physical injury, harm, or illness caused by the defendant's conduct. *Dempsey v. Bucknell Univ.*, 76 F. Supp. 3d 565, 589 (M.D. Pa. 2015). It is for the court to determine if the defendant's conduct is so extreme as to permit recovery. *Krushinski v. Roadway Express*, 627 F. Supp. 934, 938 (M.D. Pa. 1985).

Whether allegations of inadequate medical care of incarcerated individuals constitute a level of conduct that can be deemed outrageous is highly fact-specific. This Court has previously summarized the responsibilities of the Court at this juncture, stating that:

> [i]n considering a motion to dismiss, a court must accept the veracity of a plaintiff's allegations. *Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974); *White v. Napoleon,* 897 F.2d 103, 106 (3d Cir. 1990). In *Nami v. Fauver,* 82 F.3d 63, 65 (3d Cir. 1996), our Court of Appeals for the Third Circuit added that in considering

a motion to dismiss based on a failure to state a claim argument, a court should "not inquire whether the plaintiffs will ultimately prevail, only whether they are entitled to offer evidence to support their claims." Furthermore, "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46 (1957). *See District Council 47, American Federation v. Bradley,* 795 F.2d 310 (3d Cir. 1986).

*Petrone v. Pike Cnty. Prob. Dep't*, 240 F. Supp. 2d 317, 319 (M.D. Pa. 2002).

The allegation in the complaint do not read as a dispute about a particular course of treatment, but rather outright denials of obviously necessary medical care. These denials of care occurred despite the recommendations and courses of treatment implemented by outside physicians; recommendations known to prison medical staff during Cowher's incarceration. The facts as alleged are similar to those in *Miller v. Hoffman*, No. CIV. A. 97-7987, 1999 WL 415397, *8-9 (E.D. Pa. June 22, 1999), where the Court held that a reasonable juror could find in favor of a prisoner-plaintiff prevented from receiving necessary medical care. *Compare Whitenight v. Elbel*, No. 2:16-CV-00646, 2017 WL 6026379, *11-12 (W.D. Pa. Dec. 5, 2017) (granting motion to dismiss claim for intentional infliction of emotional distress by a prisoner-plaintiff based predicated upon inadequate medical care as a disagreement over level of treatment received). A reasonable juror could consider the denials of medical care to an individual in the custody and care of prison medical staff sufficiently outrageous to exceed the bounds of decency. Consistent with *Petrone*, the Court's task is not to judge the likelihood of success but to evaluate whether a plaintiff has stated facts that warrant the opportunity to supplement their claim with evidentiary support for jury consideration. The Court is satisfied that Cowher has met this standard.

Accordingly, the Court finds that Cowher's claim should proceed and the Defendant's motion to dismiss Count III is **DENIED**.

### C. PROFESSIONAL NEGLIGENCE

In Count II of his complaint, Cowher raises a claim against CCS for negligence. While Cowher's complaint does not define the particular subsect of negligence, the text of the complaint, attached certificate of merit, and response by CCS demonstrates the understanding that Cowher's claim for negligence is that of professional negligence; akin to medical malpractice. As noted by the Defendant, the basic elements of ordinary negligence and medical malpractice are similar, with medical malpractice requiring submissions to prevent the Court from becoming a *de facto* medical evaluator. *See Ponzini v. PrimeCare Medical, Inc.*, 269 F. Supp. 3d 444, 575 (M.D. Pa. 2017). CCS argues this claim should be dismissed because Cowher has not pled facts that would demonstrate a breach of any duty.

To recover on a theory of professional negligence or medical malpractice under Pennsylvania law, the plaintiff must establish:

> (1) a duty owed by the physician to the patient;
>
> (2) a breach of duty from the physician to the patient;
>
> (3) that the breach of duty was the proximate cause of, or a substantial factor in, bringing about the harm suffered by the patient, and;
>
> (4) damages suffered by the patient that were a direct result of that harm.

*Laskowski v. U.S. Dep't of Vet. Affairs*, 918 F. Supp. 2d 301, 313 (M.D. Pa. 2013) (quoting *Thierfelder v. Wolfert,* 52 A.3d 1251, 1264 (Pa. 2012)).

CCS does not appear to challenge the existence of a legal duty, but only that no breach occurred based on the facts as offered by Cowher. "Whether in a particular case that standard has been met with respect to the element of causation is normally a question of fact for the jury; the

question is to be removed from the jury's consideration only where it is clear that reasonable minds could not differ on the issue." *Ponzini*, 269 F. Supp. 3d at 575 (quoting *Hamil v. Bashline*, 392 A.2d 1280 (Pa. 1978)). The Court's scope of evaluation is thus whether Cowher has offered facts that would allow a reasonable juror to conclude that a breach occurred.

While CCS argues that Cowher's "factual averments are relatively scarce," the facts as alleged and accepted as true for the purposes of a motion to dismiss nonetheless demonstrate that CCS employees persistently declined obviously necessary surgery, ignored medical opinions stating the same, and prevented opportunities to pursue addressing medical issues. Cowher has provided the requisite certificate of merit stating that a medical professional offers a written opinion corroborating the notion that the professional standard of care was not met in this case. CCS's provided evidentiary support and arguments thereon may prove influential in resolution of the claims, however the Court's responsibility at this juncture is not to weigh evidence. To do so would constitute an overreach of the Court's authority and undermine the responsibility of the factfinder.

The Defendant's motion to dismiss Count II is **DENIED**.

### D. Punitive Damages

CCS next moves for the dismissal of Cowher's claims for punitive damages on the basis that Cowher has not offered sufficient facts to justify such an award, and moves to dismiss the claim for punitive damages on the grounds that the complaint does not allege facts that would warrant an award of punitive damages under Pennsylvania law . (Doc. 43, at 11). Cowher counters that it "would be hard to postulate a more outrageous set of facts, or one that shows greater indifference to the rights of an inmate." Doc. 24, p 1-2.

The Court finds that the Cowher's allegations in his amended complaint are enough to state a "plausible" claim for punitive damages under Pennsylvania law. *Goodfellow v. Camp Netimus, Inc.*, No. CV 3:16-1521, 2017 WL 1738398, at \*9 (M.D. Pa. May 4, 2017); *Austin v. Nugent*, 2016 WL 7048994, \*7 (M.D. Pa. Dec. 5, 2016); *see also Tucker v. Horn*, Case No. 4:16-cv-0071, 2016 WL 4679018, at \*3–4 (M.D. Pa. Sept. 9, 2016). As the court instructed in *Austin*, "Plaintiff would certainly bear a high evidentiary burden if [they] decided to seek punitive damages, but this is the very purpose of discovery." *Id.* Further, "[d]iscovery would be necessary to determine whether the defendant's actions rose to the level of outrageous conduct warranting punitive damages." However, like in *Austin*, the issue of whether Cowher will be able to make the requisite evidentiary showing is not an issue that this Court need address now. As such, Defendant's motion to dismiss Plaintiff's claim for punitive damages is **DENIED**.

E. AMENDMENT TO ADD CCS EMPLOYEES AS DEFENDANTS

At the time of filing his currently-operative complaint, Cowher had not identified specific CCS employees as transgressors. Instead, Cowher stated that CCS agents, servants, and employees would be identified for vicarious liability purposes upon discovery of their identities. (Doc. 29, ¶ 20). In his brief in opposition to this motion to dismiss, Cowher requests leave of court "to add [CCS] employees Courtney Rogers, D.O.; Crystal Shell, LPN; Nancy Palmigian, PA-C; and Russell Miller, P-AC as Defendants." (Doc. 47, at 7). As noted by the Defendant, a brief in opposition is not the proper vehicle for raising new claims or adding parties. (Doc. 52, at 4).

As presented, Cowher's request to add individual employees of CCS as Defendants is improper as presented under Federal and Local Rules of Civil Procedure. In part, under Local

Rule 15.1, a party seeking to amend a pleading must include the proposed amendment as a standalone document. Acknowledging that Cowher notices his intent to include CCS-employee Defendants upon discovery, the request to add these Defendants cannot come as a surprise. However, the Defendants and their actions must identified in the proper manner rather than forcing the opposing party and Court to review multiple documents in order to form a complete narrative of events.

Accordingly, the Court will not add the Defendants requested at this time, but also will not foreclose the possibility of consideration of a properly filed motion for leave to amend the complaint.

F. DISMISSAL OF DEFENDANTS DELBALSO, HARDY, AND THE PENNSYLVANIA DEPARTMENT OF CORRECTIONS

In a separate motion to dismiss, filed September 11, 2017, Defendants Theresa Delbalso, Laurel Hardy, and the Pennsylvania Department of Corrections moved for their dismissal under Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6). (Doc. 44). The Defendants argue that Eleventh Amendment sovereign immunity precludes claims against the DOC, Delbalso, and Hardy in their official capacities. (Doc. 45). They further argue that Cowher has not pled facts that would establish personal involvement on their part. (Doc. 45). Cowher responded with concurrence to the dismissal of all three Defendants. (Doc. 48). The Court finds no prejudice in their dismissal. The DOC Defendants' motion to dismiss is **GRANTED**. The D.O.C. Defendants are hereby dismissed.

## IV. CONCLUSION

Summarizing the above, Defendant Correct Care Solutions' motion to dismiss (Doc. 42) is **GRANTED IN PART** and **DENIED IN PART**.

The Defendant's motion to dismiss claims predicated upon *Monell* liability, for intentional infliction of emotional distress, for professional negligence, and for punitive damages, is **DENIED**. Defendants Delbalso, Hardy, and the Pennsylvania Department of Corrections' motion to dismiss (Doc. 44) under Federal Rule of Civil Procedure 12 is **GRANTED**. These Defendants are **DISMISSED WITHOUT PREJUDICE**.

An appropriate Order follows.

Dated: June 6, 2018

*s/ Karoline Mehalchick*
**KAROLINE MEHALCHICK**
**United States Magistrate Judge**